### BOURGOYNE et al. v. LOUISIANA PUBLIC UTILITIES CO. *

### No. 1206.

Court of Appeal of Louisiana. First Circuit.

Jan. 22, 1934.

For former opinion, see 150 So. 68.

Edward Rightor, of New Orleans, for appellants.

Carville & Carville, of Plaquemine, for appellee.

On Application for a Rehearing.

MOUTON, Judge.

Counsel for defendant in his application for a rehearing says that, in our ruling on the admission by defendant of article IX of plaintiff's petition, we held that "an averment of law is an averment of fact," and, consequently, that hereafter it will be the duty of defendant to answer plaintiff's conclusions of law.

In referring to the injured boy in the case, in article IX of plaintiff's petition, the allegations are, as follows: "That he climbed the said tree in order to catch the bird and in climbing the tree through no fault of his, his head came in contact with the uninsulated high power line of the defendant negligently run through the tree by them."

In its answer, defendant company denied the allegations of that article of the petition.

The allegations in that article that the boy climbed the tree, struck his head against the uninsulated high-power line of defendant, are purely averments of fact, as we see it. It is impossible for us to reconcile ourselves to the idea that such allegations are mere conclusions of law for which learned counsel for defendant is stoutly contending.

Counsel for defendant in his application in referring to the allegations in that article says that "it is an unbroken custom of the Bar of this State, where an article of a petition contains nothing but allegations of law, to ignore it in answering."

If counsel really considered the averments to which we have referred as being nothing but allegations of law, why did he not follow this unbroken custom of the bar and to have simply ignored those allegations in his answer. If they were not allegations of fact, why did he enter a denial?

In an agreed statement of facts submitted by attorneys in the case for the decision of the suit, counsel reversed his position, and, instead of entering a similar denial of article IX, admitted the allegations therein made, and also admitted articles II, III, IV, V, VI, VII, and VIII of plaintiff's petition.

These admissions were made, it must be noted, in a statement of facts. It occurs to

*Writ of certiorari denied February 26, 1934.

us that a statement of facts is always intended to embody admissions of fact; and it is inconceivable to believe that learned counsel for defendant would have gone to the trouble of preparing a statement of facts for the purpose of admitting nothing but allegations of law, which, he says, were made by plaintiff in article IX of his petition. No doubt, when this statement of facts was agreed to by counsel, he then considered the allegations, to which we have referred, as being of facts and, we must conclude, that thereafter he must have changed his mind.

■ In passing on the admissions of the above-enumerated articles of the petition, including article IX, the organ of the court, Judge Le Blanc, in the opinion therein rendered, says: It strikes us that these admissions carry with them more than the "admission of a mere conclusion of law; it seems to us to be an admission of the fact that this high-powered wire was uninsulated, and that running it in that condition through this tree at that particular place was negligence on their part."

In article IX, besides the allegations of fact that the boy had struck his head against the uninsulated high-power line, there were also incorporated therein the averments that the contact with the wire was through no fault of the boy, and that this wire was "negligently run through the tree" by defendant company.

These two allegations, of no fault on the part of the injured boy and the other that the company was negligent in running that wire as it did, were evidently mere conclusions of law; and to which the court, in the beginning of the above quotation, made due reference; and then proceeded to show the admissions of fact in the concluding portion of that excerpt. The court said, in connection therewith, that, if the admissions did not carry the force attributed to them, the admitted facts otherwise tended to prove the negligence complained of.

■ Plaintiff makes the following allegations in article V of the petition: "That immediately adjoining this lot are two residences occupied by families. That the children from the said families and all the children in the neighborhood congregate on the lot and play base-ball and other games and following their childish instincts climb in the trees located on the lot."

This article V was admitted by defendant in the statement of facts and necessarily the averments of facts therein contained. The allegations made in that article about adjoining residences to the lot, children congregating on the lot, playing baseball and other games, climbing trees on the lot, as we understand such averments, are obviously of facts, and it is impossible for us to classify them as being nothing but conclusions of law. The

allegation that the children might follow their childish instincts and would perhaps climb the trees must be taken as a conclusion of natural law which would probably prompt them to such playful acts.

■ The decision is based, not on any admission grounded on averments of law, as to the instincts of children in climbing trees or the allegations of negligence in article IX of the petition, nor to any other of that character, but on the facts which were admitted and showed that this high-powered uninsulated wire was run through the trees by defendant company where the children, with the knowledge of its employees, congregated to play at various games they might be inclined to indulge in their childish pursuits.

This appears clearly in the following expression of this court in its opinion: "We believe that the admitted facts show that this lot was a sort of playground for the children of the neighborhood where it was situated and that this was a matter of common knowledge to the public living around."

The court then said it was, under the circumstances, the duty of defendant company to insulate its wires or to have placed them in a position that children playing around them would not come in contact with them as happened in this case.

The court says further that no case from this state was cited by either counsel on this subject and grounded the decision on cases from other courts, where public utilities companies were held liable on facts and circumstances, as are herein presented.

Counsel for defendant says that we have decided otherwise in the case of Fuscia et al. v. Central Light & Power Company, 2 La. App. 195.

In that case no reference whatsoever is made to the decisions upon which this decision rests, because the facts and circumstances of the Fuscia Case did not call for the application of the same rule of law.

Counsel in concluding his application seems to have left for a while his imaginary field of law conclusions and to have taken a little flight in poetic fancy by citing the lines of Milton, the great English poet, taken from his description of the fires of Hades, as follows: "From those flames no light but rather darkness visible."

The business of the poet is to portray, not to analyse or dissect. As a rule he has little respect for his premises, his art being purely creative. This is the trouble with counsel in this case, as his theory is that our decision is based on his admissions of allegations of law. In this he is entirely mistaken, as in the opinion rendered by this court the admitted facts and circumstances which support the judgment are clearly pointed out and the legal conclusions drawn from those

facts place the issues herein contested under the ruling of the decisions referred to in the opinion.

The false premises upon which counsel has reasoned out his conclusions led him into error, and the "darkness visible" of which he speaks must be credited to him, as it is purely the creation of his own mind.

As counsel saw only darkness when he read our decision, we will say, in concluding, that his mind was then, in the noble language of the Hebrew poet, "a land of darkness, as darkness itself, and where the light was as darkness."

Rehearing refused.